**SEABOARD SHIPPING CORPORATION, Plaintiff,**

**v.**

**JOCHARANNE TUGBOAT CORPORA- TION et al., Defendants,**

**and**

**Oceanus Mutual Underwriting Association, Ltd., Defendant-Appellant,**

**v.**

**G. I. SIBRING and all other Underwriters at Lloyd's Subscribing Policy of Insurance 64/60630 and Edinburgh Assurance Co. Limited and all other Institutes of London Underwriters Companies Subscribing Policy of Insurance No. 60630, Defendants and Cross-Claimants- Appellees.**

**No. 616, Docket 71–2183.**

United States Court of Appeals, Second Circuit.

Argued April 10, 1972.

Decided May 25, 1972.

Raymond A. Connell, New York City (Healy & Baillie, Allan A. Baillie, New York City, of counsel), for appellant.

Brendan J. Connolly, Mendes & Mount, New York City, for appellees.

Before FRIENDLY, Chief Judge, and SMITH and OAKES, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Interpretation of the hoary and often poetic provisions of two marine insurance policies is necessitated by this appeal by Oceanus Mutual Underwriting Association, Ltd. (Oceanus) from a judgment of the United States District Court for the Southern District of New York (Dudley B. Bonsal, Judge) requiring the company to contribute a portion of a sum expended by Lloyd's of London to remove from its grounding a stranded and damaged barge insured by both parties. The court found that the salving operation redounded to the benefit of all three of the vessel's insurers and ordered each to reimburse Lloyd's for one-third of the costs. Oceanus appeals, and we reverse that portion of the lower court's order which held it liable to Lloyd's.

On June 16, 1964, the VAL 51, a barge owned by the Jocharanne Tugboat Corporation (Jocharanne), carrying 50,000 barrels of gasoline, went aground in Lake Ontario, immediately offshore Oswego, New York, and began leaking gasoline into the water and onto the adjacent shoreline. Notified of the grounding and of the possibility of explosion of the vessel, the Salvage Association of London appointed an independent surveyor, Mr. Paul J. Ranahan, to survey the casualty and proceed with salvage operations. Though Mr. Ranahan testified that he was acting on behalf of "all concerned underwriters," Lloyd's was the insurer actively involved in the project, and Oceanus was not notified of the incident until completion of the salvage work. Seaboard Shipping Corporation (Seaboard) was hired to offload the usable gasoline cargo remaining on the barge; Sequin Salvage Company was employed to refloat and work on the hull, which continued to present an explosion hazard. The ship was made ready for towing by June 29, and arrived in New York City, where it was declared a constructive loss, on July 4, 1964.[1]

In November, 1965, Seaboard instituted this action against Jocharanne to collect the $7,800 owed for Seaboard's services in offloading the gasoline from the VAL 51. Seaboard obtained a default judgment against the insolvent Jocharanne and, after Jocharanne had tendered the policies on the vessel to the court, Seaboard was permitted to amend its complaint to name the insurers as defendants. At the time of the accident, Jocharanne had three policies covering the barge: a $200,000 Hull and Machinery policy issued by Lloyd's of London, an $80,000 Open Cargo Legal Liability policy issued by Phoenix Assurance

---

[1]. Mr. Ranahan urged that the vessel be towed to Kingston, Ontario, directly across the lake, but Jocharanne, apparently intent on trying to save the hull, insisted on New York. The portion of the total cost due to the unnecessary length of the voyage was charged solely to Lloyd's, the hull underwriter. Neither party objects to the allocation of this cost.

Company of New York (Phoenix), and a $200,000 Protection and Indemnity (P & I) policy issued by appellant Oceanus. The coverage of the three policies was not redundant, as Lloyd's insured for damage to the hull and machinery of the vessel; Phoenix was liable for loss or damage to the cargo; and Oceanus was responsible for personal injury, loss of life, damage to docks, piers, etc., and certain other extraordinary expenses.[2]

In its answer to the amended complaint, Lloyd's cross-claimed against Oceanus and Phoenix to recover part of the $83,000 Lloyd's had paid in settlement of state court actions brought by Sequin and other local salvors for labor and materials used to remove the VAL 51 and its cargo. The Seaboard claim was settled before trial; the only remaining issue was the liability as between the insurers for the state court settlement costs.[3]

These expenses, for removal of cargo and barge, are known in maritime insurance circles as "sue and labor" expenses; they are sums spent by the insured or its representative in an effort to mitigate damage and loss once an ac-

cident has occurred; and the insurance company pays them even where, as in this case, the ship is ultimately declared a total loss, in order to encourage diligence in the prevention of excessive liability or loss. See Gilmore and Black, The Law of Admiralty (1957), pp. 64–69; Home Ins. Co. v. Ciconett, 179 F.2d 892 (6th Cir. 1950); White Star SS Co. v. North British and Mercantile Ins. Co., 48 F.Supp. 808, 812 (E.D.Mich.1943). The Lloyd's and Phoenix policies contained a "sue and labor" clause; that of Oceanus did not.

The court below found that the leaking and damaged condition of the ship threatened the separate and distinct interest of each insurer and that Jocharanne, in incurring towing and removal charges, was seeking to protect the hull, save the cargo, and prevent explosion and resultant disaster.[4] The terms of the Lloyd's and Phoenix policies which authorize sue and labor efforts to protect the hull and cargo in case of accident were held the source of those underwriters' responsibility. The basis for Oceanus' obligation to reimburse Lloyd's was found in a term of the Oceanus poli-

---

2. The Oceanus policy is a representative protection and indemnity agreement; the historical roots of this variety of marine insurance explain certain of its unique characteristics. The policies were first issued by clubs of shipowners to insure against risks for which they could not obtain commercial coverage; therefore, classically and in this Oceanus policy, claims for any loss, damage, or liability which could be covered or would be payable under the standard form of hull policy are excepted from the P & I policy. Clause 2, Oceanus policy (42a); Landry v. Steamship Mutual Underwriting Association, 177 F.Supp. 142 (D.Mass. 1959), aff'd 281 F.2d 482 (1st Cir. 1960); Arnould on Marine Insurance (14th ed.), paragraphs 129–134. The risks covered by the policy are therefore a somewhat miscellaneous group of "left-overs," including those caused by rare and catastrophic occurrences such as plague, as well as those posed by more mundane difficulties.

3. It is important to distinguish this situation from that in which several insurers

of the same risk are involved. In that instance, when losses are suffered or sue and labor expenses incurred, all contribute ratably to the payment. Great West Casualty Co. v. Truck Ins. Exchange, 358 F.2d 883 (10th Cir. 1966); American Dredging Co. v. Federal Ins. Co., 309 F.Supp. 425 (S.D.N.Y.1970); Milan v. Providence Washington Ins. Co., 227 F. Supp. 251 (E.D.La.1964). In this case, different risks were insured against by the three policies and the equitable doctrine of contribution between co-insurers of the same risk does not apply.

4. The district court found that Jocharanne was suing and laboring on behalf of all three insurers. It seems strange that, even if all the policies covered the expenses incurred, no effort was made to notify Oceanus during the 20-day salvage and towing period. In light of our disposition, we do not find it necessary to decide what effect the failure to notify might have if Oceanus' policy were construed to cover a portion of those expenses.

cy which insures against "costs or charges of raising or removing the wreck of the ship named herein when such removal is compulsory." It is not clear whether the court considered the salvors' charges "costs of raising the wreck" under the policy or preventive medicine which by forestalling explosion and sinking would relieve Oceanus of the future obligation to raise or remove the wreck.

■■ If the court meant the former, Oceanus argues persuasively that the clause was not applicable to this situation. Lloyd's argues that the pressure from the Coast Guard and other governmental authorities in the Oswego area made the removal of the barge compulsory. But "compulsory removal" is a term of art in admiralty law and refers to a situation in which a hull has been abandoned by the owner and the hull underwriter but, pursuant to government order, must be removed from navigable waters. Under those circumstances, the P & I underwriter, absorbing costs which no one else remains liable to pay, must remove the wreck or reimburse the government for removal. *See* the Wreck Removal Act, 33 U.S.C. §§ 409–414; Dover, A Handbook to Marine Insurance (6th ed. 1964) at 439. *Cf.* Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). There was no "compulsory re-

moval" of the VAL 51. Lloyd's and Jocharanne, far from abandoning their interest in the vessel, had it towed to New York in the vain hope of salvaging the hull. No governmental order was necessary to spur the removal and the costs of the operation were therefore not chargeable to Oceanus as removal costs under its policy.[5]

■ The other possibility is that the benefit the lower court found Oceanus had received from the sue and labor efforts was the avoidance of explosion and potential liability for injury to persons and damage to docks or piers as well as for wreck removal. Oceanus admits that had such a disaster occurred, it might have been liable for substantial amounts, but it claims that any calculation based on that possibility is extremely hypothetical and insists that the terms of its policy preclude holding it for any part of the expenses even if they tended to lessen the chance of explosion. Although we appreciate the motives of the district court in apportioning the costs, we are constrained to conclude that Oceanus is correct.

First we note that despite Lloyd's rhetoric, none of the expenses was incurred solely to avert those occurrences or protect those interests for which Oceanus alone was liable. All the costs were essential to any attempt to save the hull and cargo, so any benefit to Ocean-

---

5. Further, any attempt to place liability on Oceanus on the basis of its "wreck removal" clause 1(g) would have to withstand the language of that clause providing that Oceanus "is not liable for such costs, or expenses as would be covered by full insurance under the standard form of policy on hull, machinery, etc., issued by the American Marine Insurance Syndicate. [Identical in all material respects to Lloyd's policy.]

Moreover, Oceanus claims that even were this a wreck removal for which it might be liable, it was obligated under its policy to indemnify Jocharanne only when the latter "shall have in fact paid" the costs of removal. Stuyvesant Ins. Co. of New York v. Nardelli, 286 F.2d 600 (5th Cir. 1961); Burke v. London Guarantee & Accident Co., 47 Misc. 171, 93

N.Y.S. 652 (Sup.Ct.1905), aff'd 126 App. Div. 933, 110 N.Y.S. 1124 (1908), aff'd 199 N.Y. 557, 93 N.E. 1117 (1910). This court recently held that this condition is fulfilled when the judgment against the insured is satisfied in some fashion and the loss has been sustained (Liman v. American Steamship Owners Mutual Protection & Indemnity Association, 299 F.Supp. 106 (S.D.N.Y.), aff'd 417 F.2d 627 (2d Cir. 1969), cert. denied, 397 U.S. 936, 90 S.Ct. 946, 25 L.Ed.2d 116 (1970) but Oceanus claims that despite this liberalization, there must at least have been a judgment against the insured and the action for reimbursement must have been brought in its name We need not determine whether these conditions on indemnification existed or were met here.

us was in a sense incidental. More important, clause 2 of the Oceanus policy excepts from coverage "claims for any loss, damage, liability, or expense which would be payable under the present standard form of policy of the American Marine Insurance Syndicate on hull and machinery [identical in all essential respects to the Lloyd's policy] . . . and sufficient in amount to pay such loss, damage, liability or expense in full." As sue and labor expenses are covered by hull policies, they normally would not be recovered from the P & I policy underwriter. United States v. American Ins. Co. of Newark, N. J., 89 F.2d 8 (2d Cir. 1937); Landry v. Steamship Mutual, *supra*.

 Despite the lack of coverage under the Oceanus policy, one might under these circumstances consider applying equitable principles and hold those who benefited from the services rendered for a portion of their cost, under a theory of equitable contribution or restitution. *See* Restatement of Restitution § 115. Within certain limits, courts sitting in admiralty are free to apply these equitable rules. *See* Gilmore and Black, pp. 37–39; Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). Whether such principles could and ought to be applied here, however, is rendered academic by the presence of a contractual provision on this very point, which states that "[w]here the Assured is, irrespective of this Association, insured or deemed to be insured against any loss or claim which would otherwise

have been paid by the Association, there shall be no contribution by the Association on the basis of double insurance or otherwise." Clause 5, Oceanus policy. It is clear that in the absence of Oceanus Lloyd's would have been liable for the whole of the salvage expense, at least until the hull was abandoned in New York. Therefore, as these "escape" or "no-contribution" clauses have repeatedly been held valid and legal,[6] Oceanus has successfully contracted out of liability for contribution, under any theory, to a sum paid by another insurer, even though Oceanus might have otherwise been liable for that sum. Although this term, permitting Oceanus to reap benefits at no expense, seems somewhat odd, the intent that P & I insurance apply mainly or exclusively in situations to which no other coverage extends and the fact that Lloyd's has spent no more than it would have had there been no Oceanus policy mitigate the seeming harshness of the clause.

 Concluding as we do that the cross-claim against Oceanus must be dismissed, we need not reach the question of the district court's use of the pre-trial settlement with Seaboard, except to note that the use of such settlements to establish liability is forbidden as a matter of sound judicial policy. McCormack on Evidence, § 251; Hawthorne v. Eckerson Co., 77 F.2d 844 (2d Cir. 1935); Winkler-Koch Engineering Co. v. Universal Oil Products Co., 79 F.Supp. 1013 (S.D.N.Y.1947).

Judgment against Oceanus reversed and cross-claim ordered dismissed.

---

6. United States Fire Ins. Co. v. Gulf States Marine & Mining Co., 262 F.2d 565 (5th Cir. 1959); Hartford Accident & Indemnity Co. v. American Employers Ins. Co. of Boston, Mass., 200 F.2d 5 (7th Cir. 1952); Penn v. National Union Indemnity Co., 68 F.2d 567 (5th Cir. 1934); Marine Transit Corp. v. Northwestern Fire and Marine Ins. Co., 67 F.2d 544 (2d Cir. 1933).