**NL INDUSTRIES, INC., Plaintiff,**

v.

**COMMERCIAL UNION INSURANCE COMPANY, Defendants.**

**COMMERCIAL UNION INSURANCE COMPANY, Third–Party Plaintiff,**

v.

**CERTAIN UNDERWRITERS AT LLOYD'S, Insurance Company of North America, and Northbrook Excess and Surplus Insurance Company, Third–Party Defendants.**

**NL INDUSTRIES, INC., Plaintiff,**

v.

**CERTAIN UNDERWRITERS AT LLOYD'S, Insurance Company of North America, and Northbrook Excess and Surplus Insurance Company, Third–Party Defendants.**

Civ. No. 90–2124 (WHW).

United States District Court, D. New Jersey.

July 18, 1996.

Peter B. Bensinger, Jr., Bartlit Beck Herman Palenchar & Scott, Chicago, Illinois, and Kirkland & Ellis, Chicago, Illinois, and Kevin J. Connell, McCarter & English, Newark, New Jersey, for Plaintiff NL Industries.

David M. Cassidy, Howard M. Tollin, Rivkin, Radler & Kremer, Uniondale, New York, and Einhorn, Harris, Ascher & Barbarito, Denville, New Jersey, for Defendant and Third–Party Plaintiff Commercial Union.

Terry Cosgrove, Peterson & Ross, Chicago, Illinois, and William B. McGuire, Tompkin, McGuire & Wachenfeld, Newark, New Jersey, for Third–Party Defendant Certain Underwriter's at Lloyd's, London and British Companies.

Paul Koepff, Joseph Boury, O'Melveny & Myers, New York City, and Ribis, Graham & Curtin, Morristown, New Jersey, for Third–Party Defendant Insurance Company of North America.

### OPINION

WALLS, District Judge.

This matter comes before the Court on the motions for reconsideration of this Court's May 6, 1996 Opinion and Order ("Opinion") brought by plaintiff NL Industries, Inc. ("NL"), defendant Commercial Union Insurance Company ("CU"), and third-party defendants Certain Underwriters at Lloyd's ("Lloyd's").

### BACKGROUND

The Court will not repeat the facts and procedural history of this dispute which were set out at length in the May 6, 1996 Opinion. In that Opinion, the Court ruled on all of the various summary judgment motions concerning CU's duty to defend NL with regard to the new lead paint suits, and the obligations of Lloyd's, NL and third-party defendant Insurance Company of North America ("INA") to contribute to defense costs arising from the original lead paint suits. The Court granted NL's motion for summary judgment against CU for defense costs relating to the four new actions; denied CU's motion for summary judgment against INA for defense costs arising from *Santiago*, but granted it with respect to defense costs arising from *HANO* and *City of New York*; granted CU's motion for summary judgment against NL for contribution after March 1, 1992 arising from the three original lead paint claims; and granted and denied CU's motion for summary judgment against Lloyd's, and Lloyd's cross-motion for summary judgement, to the extent that Lloyd's was obligated to contribute to the defense of the *HANO* and *City of New York* actions under the Lloyd's policies from 1958 to 1966.

NL, CU and Lloyd's have now moved for reconsideration of two aspects of that Opinion: (1) factual and legal conclusions concerning the Lloyd's policies, and (2) the Court's legal conclusion that NL must contribute to its own defense costs for periods in which it was self-insured.

### DISCUSSION

### STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure permits litigants to move to alter or amend a judgment within ten days of its entry. Similarly, Local Rule 12(I) permits a party to seek reconsideration by the Court of matters "which [it] believes the Court has overlooked" when it ruled on a motion. The Third Circuit has held that the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d

Cir.1985). Reconsideration motions, however, may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment. Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2810.1. Accordingly, such motions will be granted only where (1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent a manifest injustice arises. *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995). Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted "sparingly." *Maldonado v. Lucca*, 636 F.Supp. 621, 630 (D.N.J.1986); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, at § 2810.1.

### I. The Lloyd's Policies

The Court previously found that, as to *HANO* and *City of New York*, the Lloyd's policies running from November 1, 1949 to May 1, 1958 were not triggered because they did not cover property damage arising from products liability claims; that the policies extending coverage from February 1, 1966 to February 1, 1970 overlapped with policies issued by CU and thus no duty to defend arose therefrom; but, that from May 1, 1958 to February 1, 1966 Lloyd's, as NL's sole insurer, extended coverage to property damage claims arising from products liability and thus was required to defend for claims arising from this period. NL contends that the Court made factual errors when it found that the Lloyd's 1949 to 1958 policies do not cover products liability claims, and when it found that the 1966 to 1970 policies overlapped with CU's policies. And that when these errors are corrected, Lloyd's is required to contribute to NL's defense of *HANO* and *City of New York* for the entire time that it provided insurance to NL. Lloyd's maintains that the Court arrived at an incorrect legal conclusion when it held that it had any duty at all to defend NL.

### a. The 1949 to 1958 Policies

The Court concludes that there is no basis for reconsidering the factual determination that Lloyd's 1949 to 1958 policies do not extend coverage to product liability claims. NL, for the first time, argues that the 1949 to 1958 policies are essentially identical to the 1958 to 1970 policies which indisputably cover product liability claims, and therefore, that the former policies must extend similar coverage. In addition, NL contends that Lloyd's improperly relied upon parol evidence to interpret the 1949 to 1958 policies to support its position that products liability claims were excepted from coverage, and that a plain reading of the unambiguous terms of the policies mandates the opposite conclusion.

These arguments, however, are unavailing for several reasons. First, motions for reconsideration are an inappropriate avenue for relitigating matters which could have been adequately presented the first time. And here, NL had an opportunity to contest Lloyd's interpretation of its policies, but did not. Secondly, there is no merit to the arguments proffered by NL—that Lloyd's interpretation of the 1949 to 1958 policies is nonsensical because the 1958 to 1970 policies are identical and indisputably cover product liability claims, and that parol evidence may not be used to interpret the policies. Original copies of the Lloyd's policies could not be located, and thus NL and Lloyd's entered into a stipulation as to the terms and conditions of the missing contracts, based upon originals or copies of placing slips. While it is true that the reconstructed 1949 to 1958 policies are, on their face, almost identical to the 1958 to 1970 policies, the stipulation states:

5. The issue which is expressly not addressed by this stipulation is whether NL was afforded property damage coverage for product liability claims for the policy periods prior to May 1, 1958. It is stipulated that the issue of whether property damage product liability claims are covered by pre-May 1, 1958 policies issued by the London Insurers is specifically to be left unresolved. In this connection, certain excess policy exhibits, which are appended

hereto, contain a product hazard exclusion around which the parties for purposes of this stipulation have placed brackets. There is a dispute between the parties whether or not this clause appeared in the originals of those policies.

6. Should the issue of pre-May 1958 products liability coverage be raised in further proceedings, it is agreed that this stipulation is not intended to preclude any party from offering additional admissible evidence on this remaining disputed issue.

Consequently, Lloyd's interpretation of its policies can not, as NL contends, be considered per se unreasonable.

 Moreover, when this Court last considered the issues presented here, Lloyd's offered competent evidence indicating that the disputed product hazard exclusion was included in the 1949 to 1958 policies.[1] NL presented neither evidence nor argument to the contrary. Accordingly, the Court held that product liability claims had been excepted from coverage for those policies. And, contrary to NL's assertion (advanced for the first time now), the Court properly relied upon Lloyd's proffer of extrinsic evidence to decide this contract interpretation question. Parol evidence is only inadmissible where it is offered to alter the unambiguous terms of an integrated agreement. *Oxford Commercial Corp. v. Landau*, 12 N.Y.2d 362, 365, 239 N.Y.S.2d 865, 190 N.E.2d 230 (1963); 3 Corbin on Contracts, § 573 (1960). The Court was called upon to interpret the Stipulation containing the reconstructed policies as well as the above-quoted language. That language makes clear that at least as to the 1949 to 1958 policies the Stipulation is not the integrated, final expression of the parties.

As NL has presented no controlling decision of law, no evidence previously unavailable, nor demonstrated a need to correct a manifest injustice, the Court will not reconsider its factual determination that the 1949 to 1958 policies failed to extend coverage to product liability claims.

### b. The 1958 to 1970 Policies

The Court previously found that under the 1958 to 1966 policies Lloyd's has a duty to defend NL against claims in *HANO* and *City of New York* litigation, and thus must contribute to CU; but for the period, 1966 to 1970, when CU's and Lloyd's policies overlapped, no similar duty is triggered. Lloyd's seeks reconsideration of the former, whereas NL requests the same of the latter.

#### 1) 1966 to 1970

The Court had found that from February 1, 1966 to January 1, 1970, the Lloyd's and CU policies overlapped, although Lloyd's covered property damage claims whereas CU covered those resulting from bodily injury. Lloyd's argued that its policy was merely "excess" insurance, and thus if it and CU covered the same risk, then Lloyd's had no duty to defend. Furthermore, even if this Court were to find that the two did not cover the same risk, then CU was still not entitled to contribution, for, under *Seaboard Shipping Corp. v. Jocharanne Tugboat Corp.*, 461 F.2d 500, 503 (2d Cir.1972), one insurer may only obtain contribution from another to the extent that the two insure against the same risk. Accordingly, the Court did not reach a conclusion as to the similarity of the risks, but held that under either scenario Lloyd's need not contribute.

The Court concludes that reconsideration of this finding is appropriate. First, the Court made a factual error. Lloyd's property damage coverage lasted until May 1, 1970. CU provided bodily injury coverage only, from February 1, 1966 to February 1, 1970. Thus, the "overlap" referred to above actually occurred from February 1, 1966 to February 1, 1970. Thereafter, from February 1, 1970 to January 1, 1978, CU provided coverage for property damage as well as bodily injury. Hence, from February 1, 1970 to

---

1. Specifically, Lloyd's submitted portions of deposition testimony from Peter Berry, John Bird, Richard A. Green, and Dennis R. Porter, all of whom state that, based upon their examinations of the original placing slips, the 1949 to 1958 policies did not extend coverage to products liability claims. See Exhibits to Affidavit of Terry M. Cosgrove in Support of Certain Underwriter's at Lloyd's, London and British Companies' Cross–Motions for Summary Judgment and Opposition to Commercial Union's Motion for Summary Judgment, Exhibit 3.

May 1, 1970, CU and Lloyd's policies overlapped in coverage as to property damage: as to this three month period, the Court now holds that Lloyd's "excess" insurance clause applies, Lloyd's has no duty to defend for this period and thus has no obligation to contribute to CU.

However, the period between February 1, 1966 and February 1, 1970, in which Lloyd's provided property damage coverage and CU covered bodily injury claims, is more complicated. Because the Court concludes that it erred as a matter of law with regard to this overlap, it now holds that Lloyd's has a duty to defend the *HANO* and *City of New York* actions for its policies issued during this period.

■ The relevant legal issue here concerns the risk—the Court had concluded that if the two carriers insured the same risk, than the "excess" insurance clause applied, but if not, CU could not obtain contribution. These conclusions were incorrect because the "excess" insurance clause does not apply here in the absence of "other" insurance, nor does the "same risk" contribution doctrine.

The "excess," or "other" insurance clause in Lloyd's policies provide that coverage is secondary to coverage afforded by "any other good, valid and collectible insurance inuring to the benefit of the Assured." Because, pursuant to a settlement agreement and an order of this Court, CU has been and must continue to provide for NL's defense for this period under its policies, Lloyd's argues that its policies are secondary and therefore not triggered. However, Lloyd's "excess" clause only applies "with respect to loss or claims covered hereby." Because those policies cover only property damage, and CU's covers bodily injury exclusively, Lloyd's "excess" clause is not triggered.[2]

■ Contrary to what the Court held earlier, it now finds the doctrine that one insurer may obtain contribution from another insurer only if both issued policies covering the same risk, *Seaboard Shipping Corp. v. Jocharanne Tugboat Corp.,* 461 F.2d at 503, to be applicable only with regard to coverage disputes, and not, as here, to the obligation of insurers to defend insureds. Therefore, depending upon the nature of the underlying claims asserted against the insured, contribution for defense costs may be procured by one insurer from another even though the two do not cover the same risks.

■ An insurer covers only "covered" claims, of course, and can therefore only seek contribution from another insurer where both policies cover the same risk. Therefore, the "same risk" doctrine is simply the definition of contribution in the indemnity setting. However, the duty to defend is different. Under New York law, the duty to defend is extremely broad, and attaches whenever the complaint suggests that a reasonable possibility of coverage exists. *Continental Cas. Co. v. Rapid–American Corp.,* 80 N.Y.2d 640, 648, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993). In addition, where a complaint contains covered and uncovered claims, the insurer must defend the action in its entirety. *Id.* Thus, even though the *HANO* and *City of New York* complaints contain allegations of bodily injury and property damage, and CU's policy covers only the former (and putting aside the question of contribution) CU is obliged to defend these suits in toto.

This difference between the duty to defend and the duty to indemnify requires that contribution for defense costs may be had even where the insurers in question do not provide coverage for the same risks. Indeed, it would be illogical, and inequitable, to deny to CU its right to obtain contribution from Lloyd's where their respective duties to defend have been independently activated by different claims in the same underlying suits. That a mechanical use of this "same risk" theory is inappropriate is demonstrated by its effect: had NL moved against Lloyd's directly, Lloyd's would have had to defend;

---

2. The CU policies also contain an "other" insurance clause, although it sets up an equal shares mechanism for contribution when other insurance exists. It, too, is limited to losses which occur "on the same basis." Thus, for the same reason that Lloyd's other insurance clause does not apply, CU's does not either. Accordingly, the Court need not confront the complicated issue of interpreting competing, applicable other insurance clauses. *See, e.g., Federal Ins. Co. v. Atlantic National Ins. Co.,* 25 N.Y.2d 71, 75–76, 302 N.Y.S.2d 769, 250 N.E.2d 193 (1969).

but not where, as here, NL has moved only against CU, and CU in turn, by impleader, has sought contribution from Lloyd's. Lloyd's has not presented nor has this Court uncovered a case under New York law that has applied this "same risk" contribution doctrine in the duty to defend circumstance. And this Court concludes that the doctrine should and does not apply here.

Lloyd's advances additional bases for avoiding contribution for this period, but they are the same urged with regard to the 1958 to 1966 policies. For reasons stated below, those arguments have no merit. Accordingly, Lloyd's must contribute to NL's defense of the *HANO* and *City of New York* suits for its policies issued from 1966 to 1970.

#### 2) 1958 to 1966

The Court had held previously that Lloyd's has to contribute for NL's defense costs arising from claims occurring from 1958 to 1966 for *HANO* and *City of New York*, when Lloyd's was the sole insurer for NL, covering property damage. Lloyd's argued that it had no duty to contribute for the following three reasons, all of which were rejected: (1) its and CU's policies do not cover the same risk; (2) there was no "occurrence" within the policy period; and (3) no property damage occurred. Lloyd's claims to be entitled to reconsideration, because of a clear error of law, of grounds (1) and (2), and also contends that the Court failed to address the question of whether the "excess" insurance clause bars contribution. Reconsideration is denied because the Court concludes that it made no error of law.

The Court has already explained why the "same risk" doctrine and "excess" insurance clause do not preclude CU's claim to contribution against Lloyd's when the two issued policies which overlapped in time (although not in coverage). Those arguments have even less merit for this time period, when Lloyd's was NL's sole insurer.

The Court concludes here, as it did above, that the "same risk" doctrine does not prohibit one insurer from seeking contribution of defense costs from another. As for the "excess" clause, it is inapplicable because

Lloyd's policy can only be excess if NL had other insurance covering the same risk at the same time, *see, e.g., American Transit Ins. Co. v. Continental Cas. Ins. Co.*, 215 A.D.2d 342, 625 N.Y.S.2d 653, 654 (1995). During the period in question, there was no other operable insurance policy. Lloyd's argument is that because CU is obligated to pay for the defense of *HANO* and *City of New York* arising from CU policies issued at different times (and often covering different risks), it is relieved of its obligation to defend because its policies are, as a result, "excess." However, if this were a coverage dispute in which NL had suffered a loss from a property damage claim occurring within Lloyd's policy period during which it was NL's sole insurer, Lloyd's certainly could not escape its obligation to pay (or contribute) under its "excess" clause because CU also had a duty to cover NL for different claims arising at different times. The result should be no different in the duty to defend context. Again, Lloyd's has presented no precedent to support its counter-intuitive proposition. And this Court knows of none.

Finally, Lloyd's claims that the Court's interpretation of the term "occurrence" is contrary to law, and that a proper construction renders the claims in *HANO* and *City of New York* uncovered. The Court need not reconsider this issue, for it held in the alternative that the complaints in those actions broadly allege property damage from lead paint and fail to include allegations as to when the paint was purchased or applied. Because there exists a reasonable possibility that the obtaining or use of the paint "occurred" when Lloyd's extended coverage to NL, Lloyd's must defend. *Continental*, 80 N.Y.2d at 648, 593 N.Y.S.2d 966, 609 N.E.2d 506. Lloyd's has proffered no basis to reconsider this determination, and as such the motion on this ground is denied.

Hence, Lloyd's must contribute to NL's defense of *HANO* and *City of New York* under its policies in effect from 1958 to 1970.

### II. NL's Duty to Contribute for Periods of Self–Insurance

NL seeks reconsideration on two grounds: (1) that the Court erred as a matter of law

when it held that NL is required to contribute to its own defense for periods of self-insurance, and (2) even if it has an obligation to contribute as a self-insurer, it has no obligation to contribute to the defense of the *Santiago* suit which alleges injuries occurring outside the relevant interval. Although the issue of whether an insured must contribute to its own defense because it self-insured at certain times may not be settled under New York law, the Court maintains that its prediction of New York law is correct.

The burden placed upon insurers under New York law to defend is exceedingly broad. *Continental,* 80 N.Y.2d at 648, 593 N.Y.S.2d 966, 609 N.E.2d 506. The obligation may not be divided between the insured and the insurer when a complaint contains both uncovered and covered claims—instead, the insurer must defend totally. NL's argument, admittedly somewhat cogent, is that this burden should similarly remain undivided when a complaint contains allegations of "occurrences" within both the policy period and periods of self-insurance. New York law, according to NL, requires that under these circumstances the insured must defend entirely.[3]

The problem with NL's position is two-fold: first, despite NL's claim to the contrary, it is not at all clear that New York law prohibits the Court from ordering contribution from NL under these circumstances, and second, a rule prohibiting contribution in a case such as this one would be inequitable. As the Court explained in the previous Opinion, the New York Court of Appeals acknowledged, but did not decide this issue in *Continental Cas. Co. v. Rapid–American Corp.,* 80 N.Y.2d at 655, 593 N.Y.S.2d 966, 609 N.E.2d 506. There it announced:

> the allegation that Rapid [the insured] was self-insured for a period of time predating the CNA [the insurer] coverage cannot

operate to deny Rapid the complete defense to which it is entitled under the CNA policies in the event of overlapping occurrence periods. The question whether the insured itself must contribute to defense costs—an issue on which courts have divided (compare, *Keene Corp. v. Ins. Co.,* 667 F.2d 1034, 1050–51 [D.C.Cir.1981], supra, with *Ins. Co. v. Forty–Eight Insulations,* 633 F.2d 1212, 1224–25 [6th Cir])—is appropriately deferred at least until such time as the underlying lawsuits are shown to involve "occurrences" during self-insured periods. In any event, issues of fact concerning whether Rapid was self-insured for any period make this determination inappropriate for summary judgment.

*Id.* Although the Court of Appeals did not decide the issue, it provided some guidance. To the extent that an insured has an obligation to pay for its defense for periods of self-insurance, it could not be required to do so up-front; an insurer has an absolute obligation to pay for the defense, and then afterward may seek contribution for claims pertaining to uninsured periods. *Id.* That Court seemed to be concerned that a forced sharing at the out-set would permit insurers to withhold payment for defense costs on the ground that periods of self-insurance are implicated, and then, only after a judicial determination, would the insured be reimbursed. The Court of Appeals clearly wanted to protect the insured, at least in the short-run, and ensure that the insurer provides a "complete defense." For this reason, the *Continental* Court "appropriately deferred" the issue of contribution until it could be determined if there were "occurrences" during self-insured periods. *Id.* This Court had previously questioned the wisdom behind this "deferral," because under New York law the duty to defend is determined by an examination of the "four-corners" of the complaint. Hence, this Court suggested that it is unnec-

---

**3.** NL contends that the duty to defend under New York law is "limitless ... and indivisible," and cites to *Continental Cas. Co. v. Rapid–American Corp.,* 80 N.Y.2d 640, 648, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993) in support. However, *Continental* never implies, let alone states that the duty in question is either "limitless" or "indivisible;" in fact, neither of those words appears on the page cited—not even in a different context. It is true that the duty to defend may not be divided between the insured and the insurer as to uncovered and covered claims, but as *Continental* makes clear, it is an unsettled question whether that indivisibility extends to claims falling within and without periods of insurance and self-insurance. *Id.* at 656, 593 N.Y.S.2d 966, 609 N.E.2d 506.

essary to wait until the underlying suits progress before deciding whether an insured should pay for periods of self-insurance. But, after a re-reading of *Continental*, the Court of Appeal's "deferral" appears logical and appropriate: an insured should be entitled to a complete defense initially; whether it may have to contribute to such costs can and should be decided later.

The Court of Appeals, however, made clear that it was not deciding whether an insured could be required to contribute to its own defense based on periods of self-insurance. This Court, if it wishes, need only consider *Continental*'s dicta concerning how and when contribution (if permissible in this context) may be ordered. Assuming that New York would permit contribution under these circumstances, a question this Court will address below, this Court does not read *Continental* to preclude an ordering of contribution from NL now, since NL has been dismissed from *HANO* and only fraud claims remain in *City of New York*.[4] As this Court held, those suits will not "progress to a point where it can be more readily determined whether there were 'occurrences' during the periods of self-insurance."

Although the Court of Appeals has not actually decided to permit insurers to seek contribution for defense costs from insureds relating to periods of self-insurance, this Court predicts that if faced squarely with the issue, the New York Court would do so. Although this Court appreciates the argument of NL concerning the indivisible nature of the duty to defend, the Court does not believe that that indivisibility applies to periods of self-insurance. A rule to the contrary would simply be inequitable. For example, an individual could obtain insurance for one year, and be uninsured for fifty years before and after that year. Yet, under the rule proposed by NL, if a complaint naming that individual as defendant broadly alleged "occurrences" falling within and without that one year of coverage, the insurer would have to defend the action in its entirety, and would not later be able to obtain contribution for defense costs from the insured. For this reason, other courts construing the laws of different jurisdictions have held that contribution from the insured, in this context, may be had. *See, e.g., IMCERA Group, Inc. v. Liberty Mutual Ins. Co.,* 42 Cal.App.4th 1754, 1763, 50 Cal.Rptr.2d 583 (Ct.App.1996) (California law); *Ins. Co. of North America v. Forty–Eight Insulations, Inc.,* 633 F.2d 1212, 1224–25 (6th Cir.1980), *clarified,* 657 F.2d 814, 816 (6th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981) (Illinois and New Jersey Law).

In somewhat analogous circumstances, the Second Circuit also concluded that the New York Court of Appeals would require an insured to contribute for periods of self-insurance. *Stonewall Ins. Co. v. Asbestos Claims Management,* 73 F.3d 1178, 1202–03 (2d Cir.1995). There, the circuit court predicted that New York law would require a "proration-to-the-insured" approach, for periods in which the insured was self-insured, in order to allocate indemnification costs among multiple insurers whose policies were triggered by continuous injuries. *Id.* at 1202. The *Stonewall* court, persuaded by the reasoning of the New Jersey Supreme Court which had so held with regard to New Jersey Law, *Owens–Illinois Inc. v. United Ins. Co.,* 138 N.J. 437, 466–80, 650 A.2d 974 (1994), surmised that requiring the insured to contribute was proper where continuous injuries and multiple policies were involved. *Stonewall,* 73 F.3d at 1203. Admittedly, the *Stonewall* scenario is only analogous, for it concerned contribution for indemnity rather than defense costs. And, the duty of the insurer to defend is far broader than its duty to indemnify. Consequently, NL's contention that proration-to-the-insured is inconsistent with the insurer's duty to the insured is more engaging in the defense cost context. Nonetheless, the proration-to-the-insured rule which this Court predicts that the New York Court of Appeals would embrace does not significantly undercut the broad duty to defend imposed upon insurers by New York law. The insurer still must provide a complete defense up-front. It may, however, be entitled to contribution from the insured later, if the existence of occurrences within

---

4. NL's duty to contribute with respect to *Santia- go* is discussed below.

periods of self-insurance can be demonstrated.

NL cites *Avondale Industries, Inc. v. Travelers Indemnity Co.*, 774 F.Supp. 1416, 1427 (S.D.N.Y.1991), an opinion of the Southern District of New York, for the proposition that New York law does not permit an insurer to obtain contribution from the insured for defense costs for periods of self-insurance. Yet, *Avondale* was not presented with nor did it address this issue.[5] That Court found, though, that an insurer may not use the "four-corners" rule against the insured to reduce its share of defense costs. *Id.* However, this Court has made clear that an insurer may not require an insured to pay for its portion of defense costs up-front on the basis of the four-corners rule. Rather, only after the underlying suit ripens sufficiently to permit the Court to determine whether there were occurrences within self-insured intervals can the insurer seek contribution. To this extent, *Avondale* is not to the contrary.

Because NL has presented neither an intervening change in law nor a clear error of law, its motion for reconsideration with respect to this Court's conclusion that it had to contribute for its defense for periods of self-insurance is denied.

 However, the Court will reconsider the extent of the contribution required. NL argues, correctly, that it should not be ordered to contribute to the defense of *Santiago*. The injury to the *Santiago* plaintiff was diagnosed in 1973 and has been held to trigger the CU policies in operation at the time. NL thus has no obligation to contribute to the defense of that action because it was self-insured pre–1946 and post–1989—well before and after any "occurrences" alleged in that case. Accordingly, NL must contribute only to its own defense of *HANO* and *City of New York*.

### CONCLUSION

For reasons stated, all motions for reconsideration with respect to Lloyd's duty to contribute are denied except to the following extent: Lloyd's must contribute to *HANO* and *City of New York* under its policies from May 1, 1958 to February 1, 1970; and NL's motion for reconsideration of this Court's conclusion that it had to contribute to its defense of *HANO*, *City of New York* and *Santiago* is denied, except to the extent that it does not have to contribute to the *Santiago* defense.

### ORDER

This matter having been brought before the Court on plaintiff NL Industries, Inc. ("NL"), defendant Commercial Union Insurance Company's ("CU"), and third-party defendants Certain Underwriters at Lloyd's ("Lloyd's") motions for reconsideration of this Court's May 6, 1996 Opinion and Order, and for reasons stated in the accompanying opinion, it is on July 18, 1996 hereby ORDERED that:

1. all motions for reconsideration with regard to Lloyd's duty to contribute are denied except to the following extent: Lloyd's must contribute to the defense of *HANO* and *City of New York* under its policies from May 1, 1958 to February 1, 1970.

2. NL's motion for reconsideration of this Court's conclusion that it must contribute to its defense of *HANO*, *City of New York*, and *Santiago* is denied, except to the extent that NL does not have to contribute to the defense of *Santiago*.

---

**5.** The relevant issue in *Avondale* was whether one insurer could obtain contribution for defense costs from the insured based on the insured's failure to properly notify other insurers, who, but—for the improper notice, may have had to defend the claims at issue. The court held that the insured could not be required to contribute under these circumstances, especially because it was unclear whether the other insurers who were not timely notified had any duty to cover the asserted claims, anyway.