**QUIGG BROTHERS–SCHERMER, INC., a Washington corporation, Plaintiff–Appellee–Cross–Appellant,**

v.

**COMMERCIAL UNION INSURANCE COMPANY, a Massachusetts corporation; International Marine Underwriters, a Massachusetts corporation, Defendants–Appellants–Cross–Appellees.**

Nos. 98–36070, 98–36168.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 21, 2000

Filed Sept. 5, 2000

Dennis M. Moran, Le Gros, Buchanan & Paul, Seattle, WA, for appellants.

Charles Scott Penner (argued) and James E. Lobsenz (on the briefs), Carney

Badley Smith & Spellman, Seattle, WA, for appellee.

Before: REAVLEY,* HALL and O'SCANNLAIN, Circuit Judges.

REAVLEY, Circuit Judge:

This appeal presents an insurance coverage question. International Marine Underwriters (IMU), a division of Commercial Union Insurance Company, appeals the judgment in favor of Quigg Brothers–Schermer, Inc. (Quigg Brothers). We reverse and render.

During a storm in November, 1995, two of the Quigg Brothers' construction barges, the SKOOKUM and the NO. 11 SCOW, broke from their moorings near the mouth of the Quillayute River and were carried downstream to La Push Harbor. The barges eventually landed on First Beach within the Quileute Indian Reservation, adjoining the coastal waters within the Olympic Coast National Marine Sanctuary. The presence of the barges on First Beach created several liability risks, including the possibility that the barges might wash back into the sanctuary or discharge oil, resulting in fines for nonconforming use and reimbursement for government removal. Quigg Brothers acted swiftly to secure, repair and tow the barges back to the Quigg Brothers' yard, incurring a total cost of $53,796.81.

Quigg Brothers obtained a marine subscription insurance policy which included both hull insurance clauses and protection and indemnity (P & I) insurance clauses. Quigg Brothers maintained P & I insurance on its entire fleet but maintained hull coverage on only two vessels, electing to save on premiums and bear its own hull

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation.

risks on the remaining vessels, including the SKOOKUM and the NO. 11 SCOW. IMU was the underwriter for 75% of the Quigg Brothers' subscription policy. Quigg Brothers submitted a claim to IMU for the expenses relating to the barges, seeking coverage under the P & I clauses for wreck removal and fines and penalties, which read:

> [S]ubject to the warranties, terms and conditions herein mentioned, this Company hereby undertakes to pay up to the amount hereby insured ... such sums as the owner of the [vessels] shall have become legally liable to pay and shall have paid on account of:
>
> . . .
>
> Costs or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such removal is compulsory by law; provided, however, that there shall be deducted from such claim the value of any salvage recovered from the wreck by the assured;
>
> Fines and penalties, including expenses reasonably incurred in attempting to obtain the remission or mitigation of same, for the violation of any of the laws of the United States, or of any state thereof, or of any foreign country; provided, however, that this Company shall not be liable to indemnify the assured against any such fines or penalties resulting directly or indirectly from the failure, neglect, or default of the assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation of any such laws.

The P & I clauses also contain an exclusion for expenses recoverable under hull insurance, which reads:

> Notwithstanding the foregoing, this Company will not pay for:
>
> . . .
>
> Any loss, damage, expense or claim collectible under the American Institute Hull Clauses (6/77) form of policy, whether or not the vessel named herein is actually covered by such insurance and regardless of the amount thereof.

IMU obtained a survey of the barges after the recovery, resulting in the following valuations. Value at La Push, adjusted for estimated damage: SKOOKUM: $95,000.00; NO. 11 SCOW: $20,000.00. Value at the Quigg Brothers' yard after repair and recovery: SKOOKUM: $80,000.00 Hull; $25,000.00 Machinery; NO. 11 SCOW: $45,000.00. In December, 1995, shortly after recovery of the vessels, Quigg Brothers provided a vessel schedule to their insurance broker estimating the market values of the barges to be: SKOOKUM: $150,000.00; NO. 11 SCOW: $100,000.00.

IMU denied coverage and Quigg Brothers brought this lawsuit. The district court held a bench trial, entered findings of fact and conclusions of law, rendered judgment for Quigg Brothers for breach of contract and violation of the Washington Consumer Protection Act, Wash. Rev.Code § 19.86.020 (1999), and awarded damages, exemplary damages and attorney's fees. With regard to the hull coverage exclusion, the district court found:

> Reading the P & I policy as a whole and embracing the "four corners" of the document, as urged by the defendant, and, more specifically, noting
>
> (a) that lines 24–27 of this policy expressly disavows coverage for fines and penalties resulting from the neglect of the assured to "exercise the highest degree of diligence" to prevent the imposition of such fines and penalties; and
>
> (b) that the exclusion at lines 60–62 fails, within the "four corners" of the document, to define or elaborate upon losses covered "under the American Institute Hull Clauses (6/77)";
>
> I must conclude that coverage exists under the "fines and penalties" provision, and because there is no evidence that the plaintiffs' repair efforts were not specifically and minimally necessary to avoid the potential fines and penalties, that these expenses are not excluded by lines 60–62.

On appeal, IMU contends, and we agree, that the expenses incurred by Quigg Brothers qualify as sue and labor expenses recoverable under hull insurance. Sue and labor expenses are "sums spent by the insured or its representative in an effort to mitigate damage and loss once an accident has occurred; and the insurance company pays them even where ... the ship is ultimately declared a total loss, in order to encourage diligence in the prevention of excessive liability or loss."[1] Quigg Brothers only purchased hull coverage for two of its vessels and chose to bear its own hull risks with regard to the SKOOKUM and the NO. 11 SCOW. As noted above, the American Institute Hull Clauses (6/77) were part of the Quigg Brothers' policy. The sue and labor provision reads:

> And in the case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the Vessel, or any part thereof, without prejudice to this insurance, to the charges whereof the Underwriters will contribute their proportion as provided below. And it is expressly declared and agreed that no acts of the Underwriters or Assured in recovering, saving or preserving the Vessel shall be considered as a waiver or acceptance of abandonment.

> In the event of expenditure under the Sue and Labor clause, the Underwriters shall pay the proportion of such expenses that the amount insured hereunder bears to the Agreed Value, or that the amount insured hereunder (less loss and/or damage payable under this Policy) bears to the actual value of the salved property, whichever proportion shall be less; provided always that their liability for such expenses shall not ex-

ceed their proportionate part of the Agreed Value.

> If claim for Total Loss is admitted under this Policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized or value recovered, the amount payable under this Policy will be the proportion of such excess that the amount insured hereunder (without deduction for loss or damage) bears to the Agreed Value or to the sound value of the Vessel at the time of the accident, whichever value was greater; provided always that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The foregoing shall also apply to expenses reasonably incurred in salving or attempting to salve the Vessel and other property to the extent that such expenses shall be regarded as having been incurred in respect of the Vessel.

The expenses incurred by Quigg Brothers are clearly collectible under the hull clauses as sue and labor expenses to safeguard and recover the barges. The exclusion is effective with regard to all expenses collectible under hull coverage, if obtained, and the district court erred in its refusal to apply the hull coverage exclusion. The hull coverage exclusion is central to the purpose of P & I insurance, which is "to insure owners against risks outside the scope of coverage under standard hull policies."[2] "As sue and labor expenses are covered by hull policies, they normally would not be recovered from the P & I policy underwriter."[3] Both historically, and in this case, claims which would be payable under the standard form of hull policy are excepted from the P & I policy.[4]

Quigg Brothers argues that it only intended to avoid liability and that the pur-

1. *Seaboard Shipping Corp. v. Jocharanne Tugboat Corp.*, 461 F.2d 500, 503 (2d Cir.1972).

2. *Insurance Co. of North America v. Board of Comm'rs of the Port of New Orleans*, 733 F.2d 1161, 1166 (5th Cir.1984).

3. *Seaboard Shipping*, 461 F.2d at 505.

4. *See Seaboard Shipping*, 461 F.2d at 503 n. 2.

pose of these expenses was not to repair and recover the barges. Subjective intent does not control the determination of coverage. It is not disputed that the expenses were incurred to safeguard the barges, render them seaworthy, and tow them back to the Quigg Brothers' yard. Even if the intent were to avoid liability, the expenses are collectible as sue and labor. Quigg Brothers has presented no evidence or legal authority to suggest that the expenses would not qualify as sue and labor, but has simply reiterated that the barges posed a risk of liability and that the removal was compulsory by law.

■ Where all of the costs are essential to any attempt to save the vessel, any benefit to the P & I underwriter is incidental and the hull coverage exclusion is effective to avoid P & I coverage or equitable contribution.[5] Although the recovery of the barges avoided potential liability for fines and penalties, the recovery expenses qualified as sue and labor, which are excluded from the P & I policy.

Because we rule that there was no coverage under the P & I policy, there is no basis for holding IMU in violation of Wash. Rev.Code § 19.86.020, and all other points of appeal and cross appeal are rendered moot. We reverse the judgment of the district court and render judgment that Quigg Brothers take nothing by its suit.

REVERSED AND RENDERED.

---

**5.** *See Seaboard Shipping,* 461 F.2d at 504–05.