James **DAMIANO**, Plaintiff,

v.

**SONY MUSIC ENTERTAINMENT, INC., and Bob Dylan, Defendants.**

**Civ. A. No. 95–4795(JBS).**

United States District Court,
D. New Jersey.

Dec. 16, 1996.

Opinion Denying Reconsideration
August 20, 1997.

Steven M. Kramer,* Steven M. Kramer & Associates, New York City, for Plaintiff.

Steven D. Johnson, Hecker, Brown, Sherry & Johnson, Haddonfield, NJ, Stephen M. Hayes, Orin Snyder, Parcher, Hayes & Liebman, New York City, for Defendants.

## OPINION

SIMANDLE, District Judge.

Plaintiff brings this copyright infringement action accompanied by several federal and state claims all arising out of the alleged theft of plaintiff's lyrics and music by Sony recording artist Bob Dylan. Presently before the court is defendants' motion for summary judgment. For the reasons stated below, the motion will be granted in favor of defendants.

### I. *Background*

Plaintiff's complaint lists six "works" allegedly infringed by Dylan. (Compl. at 3–6). Plaintiff claims that Dylan used several lyrics from five of the works originally composed and copyrighted by plaintiff. The sixth piece, an instrumental arrangement by Damiano, was allegedly infringed by Dylan's song "Dignity."

Defendants not only deny plaintiff's allegations, they assert that plaintiff's complaint is frivolous and fraudulent. (Def. Br. at 5). Specifically, defendants show, through the deposition testimony of plaintiff, that the purported "works" set forth in the complaint were actually created for the first time in the complaint and not registered with the copyright office as alleged. (Damiano Dep. at 174, 178, 191, 201–2).[1] Defendants seek judgment on the merits, as well as dismissal as a sanction under Rule 11, Fed.R.Civ.P.,

---

\* On April 24, 1997, the Supreme Court of New Jersey suspended Steven M. Kramer from the practice of law, for reasons not related to this case, for a period of six months effective May 16, 1997. *In the Matter of Steven M. Kramer, An Attorney at Law,* 149 N.J. 19, 691 A.2d 816 (1997). This court has not entered a suspension order for reciprocal discipline as of today's date.

1. For example, in what appears to be plaintiff's strongest claim, he sets forth the lyrics of his purported work "Only God Knows" as compared to Dylan's "God Knows."

| Damiano lyrics | Dylan lyrics |
| --- | --- |
| Only God knows the hurt | God knows you ain't pretty |
| Only God knows the pain | God knows it's true, |
| Only God knows the struggle | God knows there ain't anybody, |
| Of the misery that you claim | Ever gonna take the place of you |
| Only God knows the anguish | God knows it's a struggle, |
| Only God knows the faith | God knows it's a crime, |
| Only God knows the truth | God knows there gonna be no more |
| Of the secrets of your fate | Water for fire the next time, |
| **A different form a treason** | God don't call it treason, |
| A different type of hypocrisy | God don't call it wrong, |
| Not your usual form | It was supposed to last a season |
| of adulturism or betrayal | But it's been so strong, |
| Of intimacy | For so long, |
| Only God knows the reason | God knows it's fragile, |
| Only God knows what's wrong | God knows everything, |
| Only God knows how fragile it is | . . . God knows there's a river, |
| Only God knows how strong | God knows how to make it flow, |
| He made the winding rivers | . . . God knows there's a purpose |
| You can watch them flow | |
| Faith is your reason | |
| **Belief your purpose** | |
| Don't tell me you | |
| Didn't know. | |

Although these two works do appear to be similar as presented in the complaint, discovery has revealed that plaintiff never sought a copyright for the purported work "Only God Knows" before initiating this litigation. Only the lyrics that have here been placed into boldface had previously even existed and been copyrighted—as verses in <u>other</u> songs. Indeed, the court suspects that any similarity between these two songs is the result of an appropriation of <u>Dylan's</u> work by <u>Damiano</u>, not the other way around.

for the filing of a complaint not well-grounded in fact or law.

Apparently, for the sake of creating a side-by-side comparison of plaintiff's lines with Dylan's lines, plaintiff and/or his attorney pieced together lines from many different untitled verses composed by Damiano to create a total of five single "works." (*Id.* at 192–3, 196). The allegedly infringed lyrics are titled and organized in such a way that misleads the reader into thinking that a single piece by Damiano contains several words and phrases in common with those in a single piece by Dylan. The complaint also contains altered versions of some of Dylan's lyrics. (*Id.* at 175, 199). Some of the words in Dylan's songs are rearranged or left out, again giving an impression of similarity that otherwise does not exist.

Although this court does not take lightly the misleading nature of plaintiff's complaint, especially in the face of the obligations imposed on parties and their attorneys by Rule 11, Fed.R.Civ.P., defendants' request for dismissal as a Rule 11 sanction need not be reached since an analysis of plaintiff's claims requires dismissal on the merits.

Defendants will be given the opportunity, however, to submit within fourteen (14) days of this Opinion and Order a request for lesser Rule 11 sanctions and/or for attorney's fees under Rule 11 or under the Copyright Act, 17 U.S.C. § 505. *See Lieb v. Topstone Indus.,* 788 F.2d 151 (3d Cir.1986).

## II. *Discussion*

### A. *Summary Judgment Standard*

A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether there is a disputed issue of material fact the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *See Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1080–81 (3d Cir.1996); *Kowalski v. L & F Prods.,* 82 F.3d 1283, 1288 (3d Cir.1996); *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104

S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that: "[w]hen the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial." *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 329–330 (3d Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1987)). However, "the nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial." *Brewer,* 72 F.3d at 330 (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511.

### B. *Plaintiff's Lyric Infringement Claims*

Although plaintiff has not amended his complaint, he appears to have changed the nature of his claims in his opposition to the pending summary judgment motion. His argument now asserts that approximately fourteen of his lyrics—from multiple works, not just the five "works" set forth in the complaint—were "cherry-picked" by Bob Dylan for use in Dylan's songs. (Pl. Br. at 24) Eight of these lyrics were not in the complaint, but introduced for the first time in the plaintiff's opposition brief during summary judgment motion practice when this case was a year old. For the sake of completeness

and since the defendants were able to respond to these lyrics in their reply brief, the court will consider these lyrics as part of plaintiff's infringement claim.

Six of the lyrics presented in plaintiff's complaint are not addressed at all in his opposition brief.[2] Since plaintiff failed to come forth with any evidence or argument as to these claims, defendants' motion for summary judgment is considered unopposed with regard to these six lyrics and will be granted.

■ To establish a case of copyright infringement for his remaining lyrics, plaintiff has the burden of proving 1) ownership of a valid copyright; 2) copying of protectible expression; and 3) that the copying went so far as to constitute an improper appropriation of the plaintiff's work. *Whelan Associates v. Jaslow Dental Lab., Inc.,* 797 F.2d 1222, 1231 (3d Cir.1986), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987); *Universal Athletic Sales Co. v. Salkeld,* 511 F.2d 904, 907 (3d Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975); *Jarvis v. A & M Records,* 827 F.Supp. 282, 288 (D.N.J. 1993).

Defendants claim that plaintiff cannot prove infringement because the words and phrases that he seeks to protect are noncopyrightable, have not been copyrighted prior to this lawsuit, or are not substantially similar to the allegedly infringing lyrics.

### 1. *Ownership*

■ Plaintiff's complaint, consisting of snippets of various origin that are rearranged and stitched together under made-for-litigation titles, is a cut and paste job. As such, the element of ownership is more complex to analyze than in the typical infringement case. Damiano claims that the "works" in his complaint were all registered with the Copyright Office, a prerequisite to his maintaining an infringement action. This is clearly not accurate since none of the works was registered or even exists as constructed in the complaint. Most of the individual lines or lyrics making up the "works," however, do appear to have been registered with the Copyright Office as components of other verses composed by plaintiff. Still, defendants contend that several of the allegedly infringed lyrics were not registered and are not among the lyrics submitted by plaintiff as part of the record in this case.[3]

Plaintiff has not presented evidence to the contrary, but merely asserts that "[p]laintiff has registered **almost** all of his works" and the rest will be registered prior to this court's decision. (Pl. Br. at 25) (emphasis added). Specifically, plaintiff alleges that his work "Only God Knows," which contains several lines that are allegedly infringed by Dylan's "God Knows," and the lyric "Conceit

---

**2.** The following verses composed by plaintiff were presented in his complaint as infringed lyrics but not addressed after defendants' motion for summary judgment:

1. "I'm not sure of anything half the time anymore"
2. "A cloud of confusion filled the room to thick to withstand"
3. "Against the pale blue sky"
4. "Sunbird up in the sky/ Sunbird your flyin to high"
5. "Born are new ideas" "Against the pale blue sky"
6. "Lost days and forgotten years"

**3.** Defendants submit that the following lyrics were not found in any of the Damiano works in the record:

| Damiano lyric | Dylan lyric |
| --- | --- |
| 1. "buried inside" | "buried deep down inside" |
| 2. "Wanna try and help mankind" "I can smile in the face of reality" | "I can smile in the face of mankind" |
| 3. "Conceit is a disease" | "Conceit is a disease" |
| 4. multiple lines from purported work, Only God Knows | multiple lines from Dylan's song, God Knows |

is a disease" were in the process of being copyrighted at the time he submitted his opposition brief. Defendants, however, dispute the accuracy of this assertion and argue that a search of U.S. Copyright Office records revealed no new registrations by Damiano in 1996. (Def. Reply Br. at 5). Further, plaintiff has failed to produce any proof of filing to support his claim of pending registration for the two sets of lyrics in question. *See Wilson v. Mr. Tee's*, 855 F.Supp. 679, 682 (D.N.J.1994). Thus, summary judgment will be granted for these lyric infringement claims since plaintiff has failed to establish a prima facie case of infringement.

### 2. *Copying of Protectible Expression*

Having assumed that plaintiff's remaining lyric fragments have been registered with the Copyright Office, the court now determines whether the surviving claims can meet the additional elements of infringement. The allegedly infringed lyrics that remain are as follows: [4]

| Damiano lyric | Dylan lyric |
|---|---|
| 1. "your dignity" | "for dignity" |
| 2. "Truer words have not been spoken and once again the truce is broken" | "Truer words have never been spoken or broken" |
| 3. "She stumbles upon things I've never seen/ One word from her lips can color a dream" | "I can handle whatever I stumble upon" . . . "Don't even remember what her lips felt like on mine" [5] |
| 4. "Maybe I should just leave it all behind" . . . "If she'd only learn to make up her mind" | "She ain't even on my mind/ "She's that far behind" |
| 5. "A different form of treason" | "God don't call it treason" |
| 6. "No one deserves anything more than what they need" | "You won't get anything you don't deserve" |
| 7. "Pilate was a king" | "Jesus Christ was betrayed by a [king]" [6] |
| 8. "On the door to heaven There ain't no bell Probably the same way On the door to hell" | "Listen to the engine, listen to the bell As the last fire truck from hell goes rolling by" |
| 9. "No one to run from And no reason to hide" | "I don't cheat on myself I don't run and hide" |
| 10. "I can pretend" | "I don't pretend" |

**4.** The first five lyrics listed are those designated by plaintiff's attorney at oral argument as plaintiff's "Top Five" claims.

**5.** As an example of how plaintiff misrepresents and alters Dylan's lyrics, these two lines from Dylan's song "Most of the Time" are presented in the complaint as if they follow one another in the song. In reality, the lines are separated by over one hundred words.

**6.** Plaintiff incorrectly asserts that Dylan changed the lyric in the 1994 re-release of his song, "With God On Our Side," originally composed and copyrighted in 1963, from "kiss" to "king," thereby repeating the historical error made by Damiano in his untitled song. A review of Dylan's song reveals that the lyric is actually still "kiss." (Defendants' exhibits 64 and 66; Dylan's "Unplugged" CD and video).

11. "Maybe there's a reason for a purpose"

"God knows there's a purpose"

12. "What good is a man"

"What good am I"

---

### a. *Originality*

A key point in this case is the disagreement between the parties as to the amount of originality needed for a work to be copyrightable. Plaintiff contends that "just a dash" will suffice. *See Universal Athletic Sales Co.*, 511 F.2d at 908 ("[E]ven a modicum of creativity may suffice for a work to be protected."). Defendants, however, argue that the common words and phrases and cliches used in plaintiff's lyrics are not subject to copyright protection. *See Jarvis*, 827 F.Supp. at 291 (citing *Perma Greetings, Inc. v. Russ Berrie & Co., Inc.*, 598 F.Supp. 445, 448 (E.D.Mo.1984)); *O'Brien v. Chappel & Co.*, 159 F.Supp. 58 (S.D.N.Y.1958) (holding that phrase "night and noon" is not protectible).

■ Plaintiff relies on the decision in *Jarvis v. A & M Records*, for the proposition that even common words can be protected if placed in a certain arrangement. For example, he argues that coupling the word "stumble" with the word "lips" creates a sufficiently original arrangement of otherwise trite words. Likewise, plaintiff argues that an arrangement combining the cliche "truer words have not been spoken" with the word "broken" is creative enough to be worthy of protection. Thus, plaintiff concludes, Bob Dylan cannot subsequently use the same pairs of words or phrases together in a lyric, even if separated by many intervening lines and ideas in some instances, without infringing plaintiff's original work.

The law of copyright does not support the logical extension of plaintiff's theory. In effect, he asks us to grant him a monopoly over the use of common combinations of words such as "bell" and "hell," "run" and "hide," or "mind" and "behind" merely because they are found together in a single song—regardless of context or placement within the song. Such a result would not only stifle creativity,

it would contravene the very policy behind copyright law and the rule requiring sufficient originality for a work to be protected. As the *Jarvis* court noted, "the policy behind the rule is to prevent a deterring effect on the creations of new works because of author's fears of copying innocuous segments." *Jarvis*, 827 F.Supp. at 291. Indeed, the law of copyright has absolutely no interest in tying up random, fortuitous combinations of words.

Additionally, the court notes that plaintiff's reliance on *Jarvis* is misplaced. In that case, the defendants admitted to copying elements of the plaintiff's song via digital sampling. Since sections of the plaintiff's work were actually reproduced and used in the infringing work, there was no question as to whether the arrangement was similar—it was identical. Unlike in the present case, "the **precise** relationship of the phrases vis a vis each other was copied." *Id.* at 292 (emphasis in original). Thus, the issue was not simply whether the common words "move" and "free your body" were protectible in a given arrangement, but rather, whether the copying was qualitatively or quantitatively sufficient to constitute an appropriation of plaintiff's work. The defendants in *Jarvis* raised a fact question on that issue and so summary judgment was denied.

■ In this case, copying has not been conceded, and the question of whether plaintiff's arrangement of common words and phrases is distinctive enough to deserve protection is at the heart of the parties' dispute. Even if copying were conceded as in *Jarvis* plaintiff would not survive summary judgment because no reasonable jury could conclude that the words and phrases allegedly copied by Dylan were quantitatively or qualitatively important to the whole of plaintiff's allegedly infringed works. The words and phrases in question comprise nothing more

than a single line or two of an entire song, and the songs themselves provide completely different contexts for the allegedly infringed words and phrases. Further, when taken as a whole, no jury could find substantial similarity between the lyrics of Damiano and Dylan. Summary judgment is appropriate in copyright actions based on lyrics where no reasonable jury could find substantial similarity between the works at issue. *Nelson v. PRN Productions, Inc.,* 873 F.2d 1141 (8th Cir.) (trial court carefully studied lyrics involved and determined that reasonable minds could not differ as to absence of substantial similarity), *cert. denied,* 493 U.S. 994, 110 S.Ct. 544, 107 L.Ed.2d 541 (1989). The issue of substantial similarity need not be reached here, however, because plaintiff fails to demonstrate a threshold of originality of his lyrics.

Insofar as the infringement of plaintiff's lyrics depends on there being some protectible element in his work, plaintiff cannot establish a copyright action. The lyrics he claims were infringed are nothing more than unprotectible phrases and cliches, and even when taken as a whole, they are not substantially similar to Dylan's work. Thus, summary judgment is granted on plaintiff's lyric claims, without the need to reach any additional elements comprising an infringement action.

### C. *Plaintiff's Music Infringement Claim*

In addition to his lyric infringement claims, plaintiff asserts infringement of his instrumental composition, "Steel Guitars," by Dylan's "Dignity."

#### 1. *Ownership*

There has been a fair amount of confusion concerning the registration of plaintiff's song. Plaintiff produced during discovery a tape, marked as Exhibit 71 of defendants' moving papers, which contained the song he called "Steel Guitars." (Exhibit 71 version). That song has been analyzed by both parties' experts and compared to "Dignity."

Defendants now contend, however, that the Exhibit 71 version of "Steel Guitars" was never registered with the Copyright Office. Plaintiff claims to have submitted a tape for

registration in 1988, marked PAU 1–103–561, which, according to plaintiff's attorney, contains "Steel Guitars" as the last song on side B. (Copyright tape version). The version of "Steel Guitars" on the copyright tape, however, is not the same as the one on Exhibit 71. While there are common elements in the two versions, they are certainly not identical. Because of the confusion, the court has considered both versions of the allegedly infringed song.

First, the court notes that the Exhibit 71 version cannot be the basis of an infringement claim because plaintiff is unable to show that the work was registered with the Copyright Office. Thus, he has failed to establish a prima facie case of musical infringement for that version of "Steel Guitars." The Copyright tape version, on the other hand, although not originally identified as infringed work, apparently was registered. The court will therefore analyze the remaining elements of an infringement claim for the registered version only.

#### 2. *Copying*

■ Since there is no direct proof of copying in this case, plaintiff may establish copying if he can show (a) defendants' access to the copyrighted work; and (b) substantial similarity between the works to support an inference of unlawful copying. 827 F.Supp. at 289 (citing *Whelan Associates, Inc.,* 797 F.2d at 1232).

##### a. *Access*

■ Plaintiff asserts that "the bulk of his life's work" was submitted to Sony beginning in 1982. (Compl. at 2). He also alleges that he was told to bring his songs to several concerts which he attended courtesy of Sony. Plaintiff has produced evidence that after these concerts, he was allowed backstage and gave his work to Dylan or his agents. (Damiano Decl. at ¶¶ 2, 5; Dep. of Pam Damiano at 77–84, 97–104; Dep. of Brad Wright at 105–112). Taking these allegations as true, plaintiff has demonstrated a genuine issue of material fact as to whether defendants had access to his work.

### b. *Similarity to Infer Copying*

In addition to showing defendants' access to his work, plaintiff must also show that his song and Dylan's song were substantially similar in order to infer that copying occurred. This is the so-called "extrinsic test" of substantial similarity, which calls for a dissection of the musical structure of the two pieces in search of objective similarities. Expert testimony is permitted, and often useful, in establishing substantial similarity at this phase of the inquiry. Although both sides retained experts for the comparison of plaintiff's "Steel Guitars" to Dylan's "Dignity," the experts analyzed the irrelevant Exhibit 71 version and not the one on the Copyright tape. Plaintiff's expert concluded that the melody of "Dignity" and plaintiff's Exhibit 71 version were thirty-two percent similar. Since the two versions of "Steel Guitars" are themselves different, however, the court will not consider the expert testimony as it might apply to the Copyright tape version. Without the benefit of expert testimony or other evidence specific to the Copyright tape version of plaintiff's song, the court must engage its own analysis of the components of the songs. To the ear of this court, there is no substantial similarity in the structure, instrumentation or melody of the two songs. These songs "speak" for themselves and no reasonable factfinder could find substantial similarity.

Although this alone would dispose of plaintiff's musical infringement claim, the court will continue so as to complete this analysis.

### 3. *Substantial Similarity to Show Appropriation*

The final step of an infringement analysis is the so-called intrinsic test of substantial similarity which seeks the response of a lay person to the "total concept and feel" of the two songs at issue. *See Whelan,* 797 F.2d at 1234. "The general test for determining substantial similarity is whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Warner Bros. v. American Broadcasting Cos.,* 654 F.2d 204, 208 (2d Cir.1981).

After listening several times to both Dylan's "Dignity" and plaintiff's "Steel Guitars" as it appears on the Copyright tape, this court is convinced that no reasonable juror could find the two songs substantially similar in total concept and feel. Plaintiff's song, an instrumental, consists of two guitars—one that plays a fairly repetitious baseline, and one that plays a seemingly improvised free melody. Dylan's song has full instrumentation and accompanying lyrics. The overall effect of the two pieces is quite dissimilar— put simply, they just don't sound alike. The lack of substantial similarity necessarily leads to a conclusion that Bob Dylan did not improperly appropriate plaintiff's work and thus ends the analysis of plaintiff's music infringement claim. Summary judgment will be granted in favor of defendants as to all of plaintiff's copyright infringement claims.

### D. *Plaintiff's Remaining Claims*

Mr. Damiano also asserts federal claims under the Lanham Act and RICO, and state law claims on the theories of fraud, breach of confidence and misappropriation. To the extent that they all are based on the alleged plagiarism or theft of plaintiff's work by Bob Dylan, the dismissal of his copyright infringement claim mandates dismissal of the others since Damiano cannot establish that Dylan copied or even used any of his work.

Defendants also raise additional grounds for dismissal of plaintiff's accompanying federal and state law claims.

### 1. *Lanham Act*

Plaintiff's claim here revolves around the contention that he is the "co-author" of works that Dylan has falsely designated as his own, thus misleading the public and depriving Damiano of proper credit for his work. Although, as plaintiff points out, the elements of copyright infringement and Lanham Act claims are somewhat different, the fact that Damiano cannot establish that his work was copied by Dylan surely precludes a reasonable juror from finding that the two co-

authored any works. Plaintiff has failed to present any evidence that would support his Lanham Act claim, and thus, summary judgment will be granted in favor of the defendants.

### 2. RICO

Plaintiff alleges that defendants engaged in "massive mail fraud" by putting into interstate commerce recordings containing fraudulent statements, namely, that Bob Dylan created songs on the recordings which were actually created by plaintiff.

■ Plaintiff's RICO claims must fail because they are actually nothing more than copyright infringement claims presented as mail fraud and copyright infringement is not a predicate act under RICO. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996). Further, since plaintiff has failed to show that Dylan copied any of his work, he cannot show that the dissemination of Dylan's recordings or the statements contained therein were in any way fraudulent. Summary judgment is therefore granted on plaintiff's RICO claims.

### 3. State Claims

Defendants argue that plaintiff's state claims are pre-empted by the federal copyright law. Plaintiff does not respond to the pre-emption argument.

> Section 301 of the copyright act explicitly preempts state laws that (1) fall within the subject matter of the federal copyright law and protect works that are fixed in tangible medium of expression; and (2) create legal or equitable rights that are equivalent to any of the exclusive rights granted to the copyright holder and specified in Section 106.

*Jarvis*, 827 F.Supp. at 296.

Insofar as any of plaintiff's state claims turn on the alleged unauthorized copying or use of his lyrics and music, they are pre-empted by federal copyright law. As an initial matter, the court notes that plaintiff has not attempted to argue that his state claims arise from anything other than the alleged theft of his songs by Bob Dylan.

#### a. *Misappropriation of Property*

■ Plaintiff's misappropriation claim is based on the alleged unauthorized use of plaintiff's materials by Bob Dylan. This claim is equivalent to plaintiff's copyright infringement claim and thus is pre-empted.

#### b. *Breach of Confidence and Fraud*

■ Without reaching the question of pre-emption on plaintiff's final state law claims, the court finds that plaintiff has failed to establish either claim. First, plaintiff has offered no proof to show that defendants owed him any duty or that such a duty could have been breached by their actions. Second, plaintiff has failed to establish a claim for fraud, especially to the degree of specificity required by Rule 9(b), Fed.R.Civ.P. Plaintiff has not produced any proof of direct misrepresentations by defendants. At best, this court will accept as true plaintiff's allegation that Sony represented to him that he would be credited and compensated if Dylan used his work. Plaintiff, however, has failed to show that his work was ever used, incorporated or copied by Dylan.

Plaintiff's state claims therefore fail as a matter of law and summary judgment will be entered in favor of defendants.

### E. *Plaintiff's Appeal of Judge Rosen's Orders*

As a final matter, this court reserved decision on plaintiff's appeal of Judge Rosen's August 6, 1996, Orders pending the outcome of defendant's summary judgment motion. These appeals assert that Judge Rosen erred in denying plaintiff access to information related to data about the sales of Dylan's songs and about Dylan's alleged motive to copy the works of others. *See Damiano v. Sony Music Entertainment, Inc.*, 168 F.R.D. 485 (D.N.J.1996). Neither issue pertains to the questions decided herein, which are dispositive of the case. The granting of summary judgment in favor of defendants renders plaintiff's appeal moot.

### III. *Conclusion*

For the reasons set forth above, summary judgment is granted for defendants on all counts of plaintiff's complaint. Defendants have fourteen days to apply for Rule 11 sanctions or statutory attorney's fees as detailed in part I of this Opinion. The appeal of Magistrate Judge Rosen's Orders of August 6, 1996, is dismissed as moot.

The accompanying Order has been entered.

### ORDER

This matter having come before the court upon the defendants, motion for summary judgment; and the court having considered the submissions of the parties and heard oral argument on the matter; and for the reasons set forth in the Opinion of today's date;

It is this 16th day of December, 1996, hereby

ORDERED that the defendants' motion for summary judgment be, and hereby is *GRANTED* as to all counts of plaintiff's complaint; and it is

FURTHER ORDERED that plaintiff's appeal of Judge Rosen's Orders of August 6, 1996, be and hereby, is *DISMISSED* as moot; and it is

FURTHER ORDERED that any motion for statutory attorney's fees or Rule 11 sanctions shall be filed within 14 days of the entry of this Order.

### OPINION UPON RECONSIDERATION

SIMANDLE, District Judge.

Plaintiff James Damiano filed this copyright infringement action accompanied by several federal and state claims all arising out of the alleged theft of plaintiff's lyrics and music by Sony recording artist Bob Dylan. Presently pending is plaintiff's motion for reconsideration of this court's December 16, 1996, Opinion and Order granting summary judgment to defendants on all counts of plaintiff's complaint. For the reasons that follow, plaintiff's motion will be denied.

### I. *Background*

The central claim of plaintiff's complaint is that Bob Dylan infringed six separate works which plaintiff had composed and copyrighted. (Compl. at 3–6). As discussed in this court's Opinion of December 16, 1996, five of the purported works were actually compilations of lyrics by plaintiff which were created for the first time in the complaint. (Op. at 625). The sixth piece in plaintiff's complaint was an instrumental composition referred to as "Steel Guitars."

In opposition to defendants' motion for summary judgment, rather than pursuing the five "works," plaintiff formulated his argument to address fourteen different lyric fragments, eight of which were not even in the complaint. The court nevertheless addressed each of the fourteen lyric claims and dismissed all of them on the grounds that they were either non-copyrightable or had not been copyrighted prior to the lawsuit. Six lyric fragments which were presented in plaintiff's complaint were not among the fourteen addressed by plaintiff in the summary judgment papers and at oral argument. Those six claims were dismissed because plaintiff failed to come forth with any evidence or argument in response to defendants' motion for summary judgment with regard to those particular lyrics. (Op. at 627).

The court also granted summary judgment as to plaintiff's music infringement claim and his accompanying state and federal claims. Plaintiff now asks the court to reconsider its decision with respect to the dismissal of his music infringement claim, several of his lyric claims, and his state law claims. The court will address each argument below.

### II. *Discussion*

#### A. *Standard for Reconsideration*

Local Civil Rule 7.1(g) of the United States District Court, District of New Jersey, contains the standard to be applied to mo-

tions for reconsideration.[1] L. Civ. R. 7.1(g) requires that the moving party set forth concisely "the matters or controlling decision which counsel believes the court has overlooked." *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Md.*, 744 F.Supp. 1311, 1314 (D.N.J.1990). The Rule "does not contemplate a Court looking to matters which were not originally presented." *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159, 162 (D.N.J.1988). Rather, motions for reargument succeed only where a "dispositive factual matter or controlling decision of law" was presented to the Court but not considered. *Pelham v. United States*, 661 F.Supp. 1063, 1065 (D.N.J.1987).

 To succeed on a motion for reconsideration, a party "must show more than a disagreement with the court's decision." *Panna v. Firstrust Sav. Bank*, 760 F.Supp. 432, 435 (D.N.J.1991). A mere "recapitulation of the cases and argument considered by the court before rendering its original decision fails to carry the moving party's burden." *Carteret Sav. Bank, F.A. v. Shushan*, 721 F.Supp. 705 709 (D.N.J.1989).

 Further, there is a strong policy against entertaining reconsideration motions based on evidence that was readily available at the time that the original motion was heard; and so the court may, in its discretion, refuse to consider such evidence. *Florham Park Chevron*, 680 F.Supp. at 162–63. "Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted 'sparingly.'" *NL Industries, Inc. v. Commercial Union Ins. Co.*, 935 F.Supp. 513, 516 (D.N.J.1996) (citing *Maldonado v. Lucca*, 636 F.Supp. 621, 630 (D.N.J.1986).

B. *Plaintiff's Music Infringement Claim*

Plaintiff alleged in his complaint that his instrumental composition, "Steel Guitars" was infringed by Dylan's song "Dignity." As discussed in the court's Opinion, there are actually two different versions of the song plaintiff calls "Steel Guitars." (Op. at 630).

The first, which was produced during discovery and was marked as Exhibit 71 of defendants' moving papers, was analyzed by both parties' experts and compared to "Dignity."

Defendants argued in their motion papers and at oral argument that the Exhibit 71 version had never been registered with the Copyright Office. For that reason, the court dismissed plaintiff's musical infringement claim with respect to the Exhibit 71 version of "Steel Guitars" because plaintiff failed to meet the prima facie element of proving ownership of a valid copyright. *See Whelan Associates v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1231 (3d Cir.1986); *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir.1975); *Jarvis v. A & M Records*, 827 F.Supp. 282, 288 (D.N.J.1993).

The second version of "Steel Guitars" was registered with the Copyright Office in 1988, and although it was not originally identified by plaintiff as an infringed work, the court analyzed the copyrighted version and found that there was no substantial similarity between it and "Dignity." Therefore, summary judgment was granted on plaintiff's musical infringement claim as plaintiff had failed to establish a prima facie case of infringement.

Plaintiff now argues that the court erred in failing to consider the Exhibit 71 version, which he claims was finally registered with the Copyright office on December 5, 1996—after the summary judgment motion was briefed by both sides, after oral argument on the motion, and nearly fifteen months after plaintiff's complaint was filed. Plaintiff insists he is entitled to amend the complaint to include his post-complaint registration, citing the liberal construction of Rule 15, Fed. R.Civ.P. He also points to the fact that the parties have already analyzed the tape and submitted expert testimony on that version.

 Significantly, plaintiff never sought to amend his complaint at any time prior to this court's decision on defendants' summary judgment motion. In fact, plaintiff has still not sought leave of this court to amend his

---

**1.** Effective April 1, 1997, General Rule 12I, which previously governed motions for reargument, was renumbered Rule 7.1(g). The language of General Rule 12I was not altered in Rule 7.1(g).

complaint. Thus, there is nothing for the court to "reconsider" because plaintiff's amendment argument was raised for the first time in this motion for reconsideration. *See NL Industries, Inc.*, 935 F.Supp. at 516 ("Reconsideration motions ... may not be used ... to raise arguments or present evidence that could have been raised prior to the entry of judgment.").

Moreover, even a liberal construction of Rule 15 would not permit the amendment of a complaint that has been dismissed after more than a year of litigation. *Bermingham v. Sony Corp.*, 820 F.Supp. 834, 862 (D.N.J. 1993) (leave to amend complaint denied after action dismissed when plaintiff had opportunities to amend prior to dismissal). Plaintiff could have sought leave to amend his complaint as early as June of 1996, when he should have become aware through defendants' motion for summary judgment that the Exhibit 71 version was not registered with the copyright office. He did not do so, however, and chose to join issue upon the non-copyrighted version. At the time defendants' summary judgment motion was argued, the court could not consider the Exhibit 71 version of "Steel Guitars" as the basis of an infringement claim because it was not registered with the Copyright Office. Plaintiff has offered no justification for reconsidering that decision.

Plaintiff also argues that the court overlooked the "striking similarity of the background melodies" between "Dignity" and the Exhibit 71 version of "Steel Guitars." As previously discussed, the court did not consider the Exhibit 71 version because it was not registered, and thus could not have overlooked any portion of it. The court did however, determine that the 1988 version of "Steel Guitars" was not substantially similar to Dylan's "Dignity" as it differed "in total concept and feel." (Op. at 631). Plaintiff's moving papers do not indicate that he is seeking reconsideration of that finding. Thus, the court was surprised to receive a document on March 18, 1997, entitled "supplement in support of motion for reconsideration." Attached to the supplement is a statement by plaintiff's expert Paul D. Greene, Ph.D. pertaining to the 1988 version of "Steel Guitars," which had been fully analyzed and dismissed after the court concluded that there was no substantial similarity from which appropriation could be inferred. In short, plaintiff now seeks to generate new expert opinion testimony, after judgment has been entered, to contradict this court's finding upon matters which the court had thoroughly considered when the matter was extensively briefed and argued. Neither L. Civ. R. 7.1(g), nor any known concept of jurisprudence, permits a party to generate new expert opinions and offer them, after the fact, as evidence that the court had somehow overlooked.

The court will not, at this late date, consider evidence which could and should have been submitted earlier. This court has previously held that "[w]e are in fact bound *not* to consider such new materials, lest the strictures of our reconsideration rule erode entirely." *Resorts International v. Greate Bay Hotel and Casino, Inc.*, 830 F.Supp. 826, 831 (D.N.J.1992). Even if the court were to consider Dr. Greene's report, however, it would not disturb the court's determination that summary judgment was appropriate as to plaintiff's music infringement claim. As discussed in the court's Opinion of December 16, 1996, the final step of an infringement analysis is not dependent on expert testimony. (Op. at 631). Instead, "the general test for determining substantial similarity is whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Warner Bros. v. American Broadcasting Cos.*, 654 F.2d 204, 208 (2d Cir.1981).

 Finally, plaintiff attempts to argue in his motion for reconsideration, as he did prior to dismissal of the music infringement claim, that the Exhibit 71 version is substantially similar to Dylan's "Dignity". Incredibly, to support this argument, plaintiff submits for the very first time in his reply brief on this motion for reconsideration affidavits from twelve individuals. Their purported "lay testimony" consists of form affidavits which all include the following statements:

> I have listened to James Damiano's song "Steel Guitars" marked exhibit # 71.

I have listened to Bob Dylan's son "Dignity" released on the Bob Dylan, Greatest Hits volume III album.

It appears to me that the melody of "dignity" is similar to "Steel Guitars".

Each of the affidavits is dated March 1, 1997, which was two and one-half months after this claim was adjudicated. There is no explanation given for why these affidavits were not submitted earlier, in response to defendants' summary judgment motion and prior to the resolution of this issue on summary judgment. This evidence, like the supplemental expert statement, will not be considered on plaintiff's motion for reconsideration. It should be abundantly clear to plaintiff that "[a] litigant seeking reconsideration must show that any new evidence presented to the court was unavailable or unknown at the time of the original hearing." *DeLong Corp. v. Raymond Int'l, Inc.*, 622 F.2d 1135, 1140 (3d Cir.1980). Plaintiff does not attempt to make such a showing, and by his various attempts to relitigate previously resolved issues with the aid of previously unrevealed evidence, mocks the reconsideration process.

Thus, the court will not reconsider its decision regarding the 1988 version or the Exhibit 71 version of "Steel Guitars" as plaintiff has failed to show that a dispositive factual issue or controlling decision law was overlooked. The entry of summary judgment in favor of defendants on plaintiff's music infringement claim will not be disturbed.

## C. *Plaintiff's Lyric Infringement Claims*

Next, plaintiff argues that the court should reconsider its decision to grant summary judgment on plaintiff's lyric claims. He argues, as he did in response to defendants' motion for summary judgment, that his unique arrangements of commonplace lyrics is protectible under copyright laws. In support of this argument, plaintiff does not raise any factual issues or controlling law which the court overlooked.

Indeed, the court previously carefully considered more than fourteen separate lyrics by plaintiff, some which were not even included in his complaint, before concluding that plaintiff could not establish a lyric infringement claim for any of those lyrics.

Plaintiff now asks the court to reconsider six of his lyrics, which were all previously dismissed for various reasons.

### 1. *"Conceit is a disease"*

Plaintiff contends that this phrase was infringed by the lyrics of Bob Dylan's 1989 song "Disease of Conceit." In the Opinion of December 16, 1996, the court noted that plaintiff had not registered this lyric with the copyright office. Although plaintiff asserted at oral argument that he was in the process of registering this lyric when he submitted his opposition brief, he failed to produce any proof of filing to support his claim of pending registration. (Op. at 628). Thus, summary judgment was granted as to this lyric because plaintiff failed to establish a prima facie case of infringement.

Plaintiff now claims that he registered this lyric with copyright office on December 5, 1996, and argues that "by way of amendment to the complaint it must be considered." (Pl. Br. at 6). As noted above, plaintiff has never moved to amend his complaint as to either his music infringement claim or any of his lyric infringement claims, nor does he now seek leave to amend. Moreover, as a practical matter, the court does not see how plaintiff could establish that Dylan infringed a lyric copyrighted by plaintiff in 1996, in a song released by Dylan in 1989.

Plaintiff fails to provide a justification for reconsidering this claim which was dismissed for failure to provide proof of ownership of a valid copyright. Plaintiff's post-complaint registration does not cure the defect when he made no attempt to amend his complaint prior to the entry of summary judgment.

### 2. *"A different form of treason"*

This lyric is one of the twelve considered by the court and found to be unprotectible because the lyrics consisted of common words or cliches, or combinations thereof. This lyric in particular, allegedly infringed by Dylan's line "God don't call it treason," is clearly insufficient to form the basis of an infringement claim. The word "treason," which is the only word in common between Dylan's lyric and plaintiff's lyric, is not, as plaintiff asserts in his motion for reconsideration, "anything but a common phrase." To

the contrary, it is an ordinary single word, used in one context in Damiano's lyric, and another in Dylan's song. Surely, plaintiff cannot think that he is entitled to prevent all musicians from using the word "treason" in a song because he used it in a single lyric. Plaintiff does not own the copyright for the word "treason," although plaintiff may be seeking to perfect a new meaning of the word "frivolous."

3. *"Truer words have not been spoken and once again the truce is broken."*

This lyric, allegedly infringed by Dylan's lyric "Truer words have never been spoken or broken" was fully considered by the court when it rejected plaintiff's argument that Bob Dylan could not, without infringing plaintiff's work, use the cliche "truer words have not been spoken" in combination with the rhyming word "broken," even when separated by many intervening lines and ideas. (Op. at 629). Plaintiff has offered no reasons to reconsider this determination.

4. *"What good is a man"*

Plaintiff claims that this lyric is infringed by Dylan's lyric "what good am I." Plaintiff urges the court not to accept as mere coincidence that the common words "what good" were used by both Dylan and Damiano. Plaintiff made the identical "coincidence" argument in response to summary judgment and has shown the court no controlling law or fact which was overlooked in rejecting the argument the first time. Plaintiff cannot monopolize the common interrogatory phrase "what good."

5. *"I'm not sure of anything half the time anymore"/ "Lost days and forgotten years"*

These two claims which appear in plaintiff's complaint were among six lyrics expressly abandoned by plaintiff when he failed to address them in response to defendants' motion for summary judgment. These six lyric were reproduced in the court's Opinion at page 627, footnote 2, and summary judgment was granted as to each of them since plaintiff failed to come forth with any evidence or argument with respect to those claims. (Op. at 627).

Further, at oral argument upon defendants' summary judgment motion, plaintiff's counsel assured the court that he was limiting his case to the 14 lyrics contained in his opposition brief, and would not be seeking any further consideration as to the claims which he failed to pursue. Defendants cite to the pertinent colloquy at oral argument:

THE COURT: But the complaint, I understand I should more or less set aside because the infringements that are alleged are the 14 items [contained in the Opposition Brief]

MR. KRAMER: Yes, Sir.

THE COURT: Is that right?

MR. KRAMER: Yes, Sir.

THE COURT: Because if I decide this case based on those 14 items, I don't then want a reconsideration motion by either side that says the dispute was really different; it had to do with these six songs [contained in the complaint].

MR. KRAMER: I don't think Your Honor would face that.

THE COURT: All right.

MR. KRAMER: At least not from plaintiff.

(Tr. at 86).

Despite these clear representations by plaintiff's attorney, the court now faces exactly what it was assured it would not—a reconsideration motion which seeks to revive two of the abandoned claims. Needless to say, the court is not impressed with Mr. Kramer's cavalier disregard for his word as an officer of the court. Claims in litigation are not fungible items to be abandoned and revived at will, rendering plaintiff's theories a moving target. These claims will not now be considered when plaintiff had every opportunity to make these arguments in response to defendants' motion for summary judgment but chose not to.

Plaintiff's final point, that the court overlooked plaintiff's overall argument that it was not the use but the combination of common words that formed the basis of his claims, is completely without merit. Plaintiff argued this point at oral argument and in his papers. Since he now does no more than express disagreement with the court's decision, his

motion for reconsideration as to his lyric infringement claims will be denied. *See Panna,* 760 F.Supp. at 435.

### E. *Plaintiff's State Law Claims*

In his final argument, plaintiff argues that the court should reconsider the dismissal of his pendent state law claims, arguing that although a work may not be copyrightable, it may still be the subject of a state claim. Plaintiff originally raised claims for misappropriation of property, breach of confidence and fraud. He does not indicate which of these causes of action is the basis of an argument that the court overlooked a dispositive fact or controlling decision of law.

Plaintiff merely asserts that he presented evidence that plaintiff gave his lyrics to the defendants and that the lyrics had not been used by defendants prior to plaintiff's submission. Plaintiff does not explain how this evidence, even if accepted as true, establishes any of his state law claims.

The court held in the December 16, 1996 Opinion that plaintiff's misappropriation claim was pre-empted by federal copyright law. (Op. at 632). The court further held that plaintiff failed to establish his breach of confidence claim because he offered no proof that defendants owed him a duty or that such a duty could have been breached by their actions. Finally, the court held that plaintiff failed to produce proof of direct misrepresentations by defendants or that his work was ever used, incorporated or copied by Dylan. (Op. at 632).

While plaintiff obviously disagrees with the court's conclusions, he has pointed to no factual issue or controlling decision of law which was overlooked by the court in reaching these decisions. To the extent that plaintiff cites case law that was not previously presented to the court and is not controlling in this court, those cases will not be considered as support for this motion. Also, the court will deny plaintiff's request that the court rely upon the recent case of *Sons of Thunder, Inc. v. Borden, Inc.,* 148 N.J. 396, 690 A.2d 575 (1997), because it has no relevance to this case. *Sons of Thunder* deals with a breach of contract claim, which plaintiff has not asserted in this case.

Therefore, plaintiff's motion for reconsideration of his state law claims is insufficient and will be denied.

### III. *Conclusion*

For the reasons above, plaintiff's motion for reconsideration of the court's Opinion of December 16, 1996, granting summary judgment to defendants on all of plaintiff's claims, will be denied. Defendants shall have twenty (20) days to apply for sanctions under Rule 11, Fed.R.Civ.P., and/or for statutory attorney's fees, as previously detailed in the Opinion and Order of December 16, 1996.[2]

An appropriate order follows.

### ORDER

This matter having come before the court upon plaintiff's motion for reconsideration of the court's Opinion and Order dated December 16, 1996, in which the court granted defendants' motion for summary judgment as to all of plaintiff's federal and state claims; and the court having considered the submissions of the parties; and for the reasons set forth in the Opinion of today's date;

IT IS this 20th day of August, 1997, hereby

ORDERED that plaintiff's motion for reconsideration be and hereby is *DENIED,* and that any application by defendants for sanctions under Rule 11, Fed.R.Civ.P.,

---

**2.** Defendants' initial application for summary judgment on the merits was accompanied by an application for dismissal as a sanction under Rule 11, Fed.R.Civ.P., for the filing of a complaint not well-grounded in fact or law. (See Op. filed Dec. 16, 1996, at 625–26). The court deferred consideration of Rule 11 sanctions and/or for attorney's fees under Rule 11 or under the less demanding standard of the Copyright Act, 17 U.S.C. § 505, until such an application could be filed, within fourteen days thereafter. (*Id.* at 626). When defendants sought to enlarge the period to seek attorney's fees because of the prospect that plaintiff would be seeking reconsideration, the court extended the application deadline until fourteen (14) days after decision of any reconsideration motion, which is now further enlarged to give sufficient time to include costs and fees expended in defense of this reconsideration motion as well.

and/or for statutory attorney's fees shall be filed within twenty (20) days hereof.